UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEECO MANUFACTURING CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>IMPERIAL MANUFACTURING GROUP, et al.,<br><br>Defendants. | CASE NO. C03-3061JLR<br><br>SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW |

## I. INTRODUCTION

This matter came before the court on a bench trial from June 21, 2005 through June 24, 2005. After considering the evidence presented at trial and the parties' opening statements and closing arguments, the court issued findings of fact and conclusions of law on July 7, 2005 (Dkt. # 282). The court directed the parties to provide additional briefing on several issues. After considering that briefing, the court ordered further briefing on August 29, 2005 (Dkt. # 291). The court has considered that briefing, and now enters these supplemental findings of fact and conclusions of law. These findings and conclusions should be read in conjunction with the court's first findings of fact and conclusions of law, and the court adopts the shorthand it used in that order. The court directs the clerk to enter judgment in accordance with this order.

SUPPLEMENTAL FINDINGS & CONCLUSIONS - 1

## II. SUPPLEMENTAL FINDINGS OF FACT

**Facts Relevant to Damages from Imperial's Reverse Passing Off**

1. The parties agree that Exhibit 52 contains the best evidence of the price Imperial paid to MEECO for products that MEECO overlabeled. The parties also agree that Exhibit 104 contains the best evidence of the price at which MEECO sold those products to its customers, including some products for which True Value paid a lower price than other customers. The court finds no better evidence of these prices, and will rely on the prices listed in these two exhibits in determining damages.

2. The best evidence of the quantity of products that Imperial overlabeled is Exhibit 210. Richard Hayes' testimony supports this finding. MEECO's insistence that Imperial began overlabeling Imperial product as early as March 2003, and that the best evidence of quantity is thus MEECO's March 2003 inventory report (Exhibit 207), finds little support in the record. MEECO points to a March 17, 2003 letter from Imperial sales representative William Cargille to True Value buyer John Clapp regarding renumbering certain Imperial products in anticipation of a changeover at True Value to Imperial branded products. Although this is evidence that the changeover began in March 2003, the court finds that it does not show that the overlabeling process began any earlier than May 2003. Mr. Hayes testified that Imperial began discussing replacing MEECO-labeled product at True Value with Imperial-labeled product as early as January 2003, but never suggested that the overlabeling of MEECO goods began before Imperial received MEECO's May 1, 2003 cease and desist letter. Exhibit 210 is the best evidence of the scope of the overlabeling.

3. Based on the court's findings regarding the price Imperial paid MEECO for products, the price at which Imperial sold the overlabeled product, and the quantity of overlabeled product, the court finds that Imperial's gross revenue from the overlabeled product was $85,353.41, as calculated in Imperial's final supplemental brief.

### Facts Relevant to Damages for Copyright Infringement

4. The parties presented no evidence at trial regarding the value to Imperial of using MEECO's copyrighted label texts, the value of those label texts to MEECO or Mr. Schaefer, or industry custom for compensating the writers of label texts.

5. Nonetheless, the court reiterates Conclusion of Law No. 41 from its first findings of fact and conclusions of law. Part of the court's conclusion was that "Imperial's use of MEECO's copyrighted texts had value to Imperial. Imperial's infringement permitted it to avoid the expense and delay of authoring its own label texts." This portion of the conclusion of law is more properly labeled a finding of fact, and the court incorporates it as a finding of fact here.

### III. SUPPLEMENTAL CONCLUSIONS OF LAW

### Conclusions Regarding MEECO's Reverse Passing Off Damages

1. Reverse passing off is a form of trademark infringement. A plaintiff's recovery for trademark infringement includes the defendant's profits from the infringement, the plaintiff's actual damages, and the costs of the action. 15 U.S.C. § 1117. A court must employ the principles of equity in determining a plaintiff's ultimate recovery. Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993). Where infringement is "deliberate and willful," equity favors a monetary award. Id.

2. The court concludes an award of $85,353.41 to be an appropriate determination of Imperial's profits from copyright infringement. Although the court acknowledges

SUPPLEMENTAL FINDINGS & CONCLUSIONS - 3

that this figure is more accurately described as Imperial's gross revenue from its reverse passing off, Imperial has not offered persuasive evidence of profit that differs from the gross revenue. See 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). The only evidence that Imperial offered of cost or deduction was Mr. Hayes' testimony that Imperial's overall profit margin is approximately ten percent. The court finds this evidence insufficiently tied to Imperial's reverse passing off to warrant deference.

3. Imperial has not offered proof of actual damages, but the court reiterates its previous finding of fact that Imperial's reverse passing off damaged MEECO by keeping its products out of the marketplace and depriving MEECO of the goodwill associated with its product sales.

4. After considering the circumstances of the case, the court may fix damages for trademark infringement "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). If the court finds that "the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id.

5. The court finds that $85,353.41 is inadequate to compensate MEECO for Imperial's reverse passing off. The court thus increases that amount by a multiple of two to compensate for the damage MEECO sustained beyond its loss of profits. Imperial's reverse passing off eliminated the MEECO name from one of MEECO's largest customers, a form of damage that a mere award of profits does not capture.

SUPPLEMENTAL FINDINGS & CONCLUSIONS - 4

6. The court awards MEECO damages of $170,706.82 for Imperial's reverse passing off.

**Conclusions Regarding Copyright Infringement Damages and Injunctive Relief**

7. MEECO's failure to present evidence regarding the fair market value of its copyrighted label texts, the value of the copyrighted texts to MEECO, or industry custom dictates that the court cannot award more than a nominal amount as actual copyright damages. The evidence establishes that since beginning to use MEECO's copyrighted texts, Imperial has sold at least one million products with labels incorporating those texts. The court concludes that a nominal reasonable royalty rate of one cent per product is appropriate, as this rate poses no danger of overcompensating MEECO for its label texts. The court therefore awards actual damages of $10,000 for Imperial's copyright infringement.

8. The court orders that Imperial is permanently enjoined from using MEECO's copyrighted label texts. The injunction shall not apply to products that have already been labeled with infringing texts as of the date of this order. The court finds that its award of copyright damages is sufficient to compensate MEECO for the harm it will suffer from the sale of products labeled before this order that infringe its texts. The burden on Imperial of relabeling and/or recalling products that already bear infringing labels would greatly outweigh the harm that MEECO will suffer from the sale of these products.

## IV.  ORDER

Based on the foregoing supplemental findings of fact and conclusions of law, the court directs the clerk to enter judgment for MEECO for $180,706.82 and the permanent injunction described above.  If MEECO seeks costs and attorneys' fees, it must do so in a proper postjudgment motion.

Dated this 23rd day of September, 2005.

JAMES L. ROBART
United States District Judge

SUPPLEMENTAL FINDINGS & CONCLUSIONS - 6