UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEECO MANUFACTURING CO., INC.,

Plaintiff,

v.

IMPERIAL MANUFACTURING GROUP, et al.,

Defendants.

CASE NO. C03-3061JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' motions for attorneys' fees (Dkt. ## 300, 304) and a motion for costs (Dkt. # 306) from Plaintiff MEECO Manufacturing Company ("MEECO"). The court has reviewed the parties' briefing and supporting declarations. For the reasons stated below, the court reserves final ruling on the attorneys' fees motions, and GRANTS in part MEECO's motion for costs.

## II. BACKGROUND

In order to assess the parties' competing claims for attorneys' fees, the court reviews the evolution of this action. MEECO brought claims for breach of two contracts (a "Distribution Agreement" and a "Confidentiality Agreement"), promissory estoppel, misappropriation of trade secrets, copyright infringement, and a violation of the

ORDER – 1

Washington Consumer Protection Act ("CPA"). In addition, MEECO brought claims under the Lanham Act under a variety of theories: unfair competition, infringement of its "Super Sweep" trademark, reverse passing off of its trademarked goods, and infringement of its trade dress. Defendants Imperial Manufacturing Group, Imperial Sheet Metal, Ltd., and Normand Caissie (collectively "Imperial") counterclaimed for tortious interference with its business relationships.

Summary judgment disposed of many of the claims at issue. The court dismissed MEECO's claims for breach of the Distribution Agreement and promissory estoppel, its CPA claim, and Imperial's tortious interference counterclaim. The court also dismissed almost all of MEECO's trade secret claim and its closely related claim for breach of the Confidentiality Agreement. The only portion of those claims that survived summary judgment was a narrow strand related to the chemical formulation of a single MEECO product.

At trial, MEECO failed to offer sufficient evidence on several of its claims, leading the court to dismiss them under Fed. R. Civ. P. 52(c) at the close of MEECO's case. Those claims included MEECO's remaining trade secret claims, its claim for breach of the Confidentiality Agreement, its claim for trade dress infringement, and its claim for trademark infringement arising out of the use of its product pictures on the True Value Hardware national website. At the close of all evidence, the court granted judgment against MEECO's claim for infringement of its "Super Sweep" trademark. MEECO won judgment on only two claims: its claim for reverse passing off of its trademarked products, and its claim for copyright infringement.

MEECO and Imperial each seek attorneys' fees on several claims on which they prevailed. MEECO also seeks costs under Fed. R. Civ. P. 54(d).

ORDER – 2

## III.   DISCUSSION

The parties recognize that only a few of the claims in this action support a request for attorneys' fees.  MEECO seeks to recover fees for its successful claims under the Lanham Act.  Imperial seeks to recover fees for its successful defense of MEECO's claims under the Distribution Agreement and Confidentiality Agreement.

**A.   MEECO is Entitled to Fees for Its Reverse Passing Off Claims; Imperial is Entitled to Fees for Successfully Defending Against all Contract Claims.**

Turning first to the Lanham Act claims, the court finds that MEECO is entitled to attorneys' fees.  Under the Lanham Act, a court may award fees in "exceptional cases." 15 U.S.C. § 1117(a).  In this circuit, a showing of "deliberate" or "willful" infringement provides a basis for a fee award.  Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993).  In its first set of findings of fact and conclusions of law, the court found that Imperial's decision to "overlabel" MEECO products with an Imperial label was deliberate and willful.  (Dkt. # 282 at 6).  Imperial argues that the court merely found that its "relabeling of its MEECO inventory was deliberate and willful," and that this "does not amount to a finding that Imperial willfully or deliberately infringed MEECO's trademarks."  Imperial Opp'n at 2 (emphasis in original).  Imperial mischaracterizes the court's findings.  The court reiterates that Imperial had numerous alternatives in dealing with its remaining MEECO inventory, and it chose to engage in reverse passing off.  In essence, Imperial sold counterfeit goods.  Contrary to Imperial's suggestion, no finding of bad faith is necessary to impose attorneys' fees in a Lanham Act claim.  Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1217 (9th Cir. 2003), but cf. Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000) (suggesting that there may be a "bad faith" component to "willful" infringement, but not to "deliberate" infringement).  Even if bad faith were necessary, however, Imperial's reverse passing off was in bad faith.  The

ORDER – 3

evidence presented at trial demonstrated that Imperial decided to engage in reverse passing off to more quickly eliminate its competitor's product from the shelves of a major retailer.[1]

Imperial, on the other hand, is entitled to attorneys' fees on MEECO's two breach of contract claims. Imperial clearly prevailed in defending against MEECO's claim for breach of the Confidentiality Agreement. The Confidentiality Agreement provides for attorneys' fees to a party who prevails in a dispute arising under it. The availability of fees under the Distribution Agreement provides an additional wrinkle, because the court held that the parties never entered that contract. Nonetheless, the draft of the Distribution Agreement that MEECO attempted to enforce provided that the prevailing party in a dispute under it was entitled to fees. Under Washington law, a party who successfully defends against a contract claim on the ground that no contract was formed is entitled to attorneys' fees if the party seeking to rely on the contract would have been entitled to fees if it had prevailed. Mt. Hood Beverage Co. v. Constellation Brands, Inc., 63 P.3d 779, 791 (Wash. 2003). Imperial therefore can recover fees it incurred defending against MEECO's claims under the Distribution Agreement.[2]

---

[1] Imperial asserts that it "performed the relabeling under the good faith belief that it was legally entitled to do so." Imperial Opp'n at 2. Imperial does not explain how it acquired, in "good faith," the belief that it was entitled to violate the Lanham Act. At best, Imperial acted in deliberate ignorance of the law.

[2] Imperial is not entitled to recover time spent defending against MEECO's promissory estoppel claim. That claim did not arise under any contract between the parties, but rather on MEECO's assertions that Imperial made promises to it on which it justifiably relied.

ORDER – 4

### B. The Parties Must Both Establish the Attorneys' Fees Attributable to the Causes of Action on Which They Prevailed.

Under both the Lanham Act and Washington law, a party can generally only recover attorneys' fees incurred in pursuing claims or defenses for which fees are available. Gracie, 217 F.3d at 1069 (holding that "as a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims"); Kastanis v. Educ. Employees Credit Union, 859 P.2d 26, 36 (Wash. 1993) ("[A] plaintiff can be required to segregate its attorney's fees between successful and unsuccessful claims . . . .").[3] Apportioning fees between different claims is not always a simple task, and courts have recognized that some fees are appropriately attributed to "the litigation as a whole," and thus are recoverable. Brand v. Dep't of Labor & Indus., 989 P.2d 1111, 1117 (Wash. 1999) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).

Neither party has provided sufficient evidence for the court to properly apportion attorneys' fees in this action. MEECO and Imperial bear the burden of establishing their entitlement to any attorneys' fees. Mahler v. Szucs, 957 P.2d 632, 650 (Wash. 1998); Hensley, 461 U.S. at 437. In this case, the parties have substantially overestimated the portion of their attorneys' fees that they can recover. They must submit supplemental briefing addressing the proper apportionment of fees. When they do, the court cautions them that it will not accept naked estimates from counsel regarding the portion of time

---

[3]MEECO contends that because it was the "substantially prevailing party" in this action, Imperial cannot recover fees on its contract claims. MEECO Opp'n at 5. Katsanis is but one example of abundant authority rejecting this contention and establishing an obligation to apportion fees between successful and unsuccessful claims. Moreover, the court queries whether MEECO, who prevailed on only a few of the claims it brought, and recovered less than a tenth of the damages it sought, appropriately deems itself the "substantially prevailing party."

ORDER – 5

they spent on various claims. The parties' time records should demonstrate how many hours were spent in pursuing successful claims and defenses. The court expects the supplemental briefing to focus on this evidence rather than broad assertions from counsel.

In addition, it appears that counsel have overestimated the extent to which their claims are based on common facts or are inseparable from other claims. See Kastanis, 859 P.2d at 36 (noting that for "unrelated" claims, "the court should award only the fees reasonably attributable to the recovery"). In MEECO's case, it should be relatively easy to separate the time spent pursuing the reverse passing off claim from all other claims. In Imperial's case, the time its counsel spent defending against the contract claims may overlap with other claims, but the court nonetheless expects a concerted effort to identify the extent of that overlap. Both parties' current estimates of the amount of time counsel spent pursuing claims that entitle them to fees are unsupported by their time records. They must remedy that deficiency in supplemental briefing. If they do not, the court will estimate its own apportionment of fees.

**C.      The Court Declines to Award Imperial Attorneys' Fees for the Representation of Its Disqualified Former Counsel.**

For the first three months of 2004, the parties battled over whether Imperial's former counsel could continue representing Imperial despite their representation of MEECO on related trademark and trade dress protection matters. The court entered an order disqualifying Imperial's counsel on February 27, 2004, and reaffirmed that order in an order denying Imperial's motion for reconsideration in April 2004.[4]

Both parties seek fees related to this dispute. MEECO asks that the court decree that it can recover the attorneys' fees it incurred in successfully disqualifying Imperial's

---

[4]The Honorable John C. Coughenour, who presided over this action before it was reassigned to this court, entered the orders disqualifying Imperial's former counsel.

ORDER – 6

counsel. Imperial seeks fees it incurred for the time its former counsel spent in this action before the disqualification order.

The court declines to force MEECO to pay Imperial for the representation of its former counsel. Imperial's former counsel had a conflict of interest, and never should have represented Imperial in this matter. The court has no way of knowing who is responsible for Imperial's decision to press on with its former counsel despite the conflict. It may be that previous counsel did not fully disclose the conflict to Imperial, so Imperial had no basis to make an informed decision about retaining counsel. It may be that Imperial was fully informed of the conflict and chose to retain its former counsel despite the risk of disqualification. This is a question for Imperial to resolve with its former counsel. In any event, it would be inequitable to require MEECO to pay for the representation of Imperial's former counsel. When Imperial reformulates its attorneys' fees request in compliance with this order, it shall submit no request for the fees of its former counsel.

MEECO, on the other hand, is entitled to all fees that it reasonably expended in having Imperial's former counsel disqualified. Even if MEECO had brought this action solely to pursue its successful claims under the Lanham Act and Copyright Act, its effort to disqualify counsel would have been essential. Part of MEECO's success on its Lanham Act claim is its success in arguing that the court should preserve the integrity of this trademark action by preventing its former trademark counsel from representing Imperial. MEECO is entitled to attorneys' fees for that effort.

**D.     The Court Cannot Address the Reasonableness of the Parties' Fees Requests Until It Receives Supplemental Briefing.**

Until the parties submit additional materials reflecting an appropriate apportionment of their attorney time, the court cannot engage in a lodestar analysis under

ORDER – 7

either Washington or federal law. The court notes, however, that in addition to properly apportioning attorney time, the parties bear the burden of establishing the reasonableness of the hourly rates that counsel charges and that counsel's time was reasonably expended. Gracie, 217 F.3d at 1070 (9th Cir. 2000); Mahler v. Szucs, 957 P.2d 632, 650 (Wash. 1998). The court will not award attorneys' fees for "hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." Bowers v. Transamerica Title Ins. Co., 675 P.2d 193, 203 (Wash. 1987). In addition, to the extent the parties seek to recover fees for paralegal services, they must satisfy the requirements of Absher Constr. Co. v. Kent Sch. Dist. No. 415, 917 P.2d 1086, 1088 (Wash. Ct. App. 1995).[5] Imperial provided none of counsel's time records in this case, and thus provided the court with no basis to assess reasonableness. If Imperial does not submit time records with its supplemental briefing, the court will not award it attorneys' fees.

**E.     The Court Grants MEECO's Motion for Costs in Part.**

MEECO requests costs under Fed. R. Civ. P 54(d) as the prevailing party in this action. Imperial concedes several items of cost, but contests others on the basis that they are not attributable to any claim on which MEECO succeeded. The court has broad discretion to decline to award costs. See Assoc. of Mexican-American Educators v. California, 231 F.3d 572, 591-593 (9th Cir. 2000). Here, the court declines to award MEECO costs that it incurred solely in pursuing unsuccessful claims. For that reason, the court deducts $1362.80 for the witness fee of Thomas Martin and $40 for the testimony of Georgia Kearns. Both witnesses testified only as to MEECO's unsuccessful claims. It

---

[5] Unless the parties persuasively argue otherwise, the court will assume that paralegal fees are recoverable under the Lanham Act, and that federal law does not mandate a substantially different standard for recovering those fees than the one set forth in Absher. See Yahoo!, Inc. v. Net Games, Inc., 329 F. Supp. 2d 1179, 1193 (N.D. Cal. 2004).

ORDER – 8

also deducts the $50 fee that MEECO claimed for the trial testimony of John Clapp. Mr. Clapp testified only by deposition, and thus is not entitled to a trial witness fee. The court awards MEECO costs of $4994.22.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part MEECO's motion for costs (Dkt. # 306), and awards costs of $4994.22. The court reserves ruling on the parties' motions for attorneys' fees pending supplemental briefing in accordance with this order. The parties shall each file supplemental briefing by December 9, 2005, and may each submit a response to the other's supplemental brief by December 16, 2005. The court will not accept reply briefs. The clerk shall renote both attorneys' fees motions (Dkt. ## 300, 304) for December 16, 2005.

DATED this 22nd day of November, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 9