UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEECO MANUFACTURING CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> IMPERIAL MANUFACTURING GROUP, et al., <br><br> Defendants. | CASE NO. C03-3061JLR <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the court on the parties' motions for attorneys' fees (Dkt. ## 300, 304) and a motion for reconsideration (Dkt. # 318) of the court's prior order awarding costs to Plaintiff MEECO Manufacturing Company ("MEECO"). The court has reviewed the parties' briefing and supporting declarations. For the reasons stated below, the court GRANTS in part and DENIES in part both attorneys' fees motions, and GRANTS MEECO's motion for reconsideration.

## II.  BACKGROUND

On November 22, 2005, the court entered its first order addressing attorneys' fees (Dkt. # 317). The parties should read this order in conjunction with the prior order. In the prior order, the court established that each party was entitled to recover attorneys'

ORDER – 1

fees only on a narrow subset of claims or defenses.  The court found that Imperial could recover fees it incurred defending against MEECO's claims under the unsigned Distribution Agreement and the Confidentiality Agreement between the parties.  The court found that MEECO could recover only for its successful claim of reverse passing off under the Lanham Act.  The court declined to enter a specific fee award to either party, however, because it found that neither party had properly apportioned its fees between its successful and unsuccessful claims.  The court directed both parties to make a "concerted effort" to properly apportion their fees.  The parties submitted supplemental briefing and evidence in an effort to do so.

### III.   DISCUSSION

In evaluating each party's fee request, the court reiterates that the party seeking fees bears the burden of establishing their entitlement to them.  As the court will repeatedly note below, counsel's billing records mostly do not permit either counsel or the court to discern which issues counsel was addressing.  Both parties' counsel were aware from the outset of this litigation that if they had any right to recover attorneys' fees, that right would likely be limited to a few of their claims or defenses.  Counsel nonetheless chose not to keep records that would permit them to track their work on a claim-by-claim or issue-by-issue basis.  That choice has left all counsel in a poor position to support their attorneys' fees requests with evidence.

Before proceeding with its allocation of fees, the court finds that the hourly rates that each attorney and paralegal charged in this litigation are reasonable.  MEECO notes that Imperial's counsel uniformly billed at substantially higher rates than its counsel.  MEECO does not, however, offer any authority for the proposition that the court's role in assessing the reasonableness of fees is to equalize the hourly rates of opposing party's

ORDER – 2

counsel. The court finds that Imperial's counsel's hourly rates are at the high end of the range of reasonable hourly rates in the Seattle area, but are nonetheless reasonable.

In addition, the court declines to award either party attorneys' fees for their dispute over attorneys' fees. Under the circumstances of this case, the court expects both parties to have incurred equal expense in challenging fees. Moreover, the court prefers to discourage the parties from engaging in protracted fee battles. The court declines to reward a party for the dubious distinction of spending more money fighting over fees than its opponent.

**A.   Imperial's Fee Request**

Imperial's first task under the court's prior order is to apportion time between those claims for which it is entitled to fees and those for which it is not. For the most part, Imperial candidly admits that it is unable to do so. The court has reviewed Imperial's legal bills in this action, and the majority of the descriptions that accompany each time entry do not reveal the claims on which the timekeeper was working. Where the entries reveal that the timekeeper was working on a claim for which Imperial has no right to recover fees, Imperial's counsel have attempted to exclude those fees from their request. In addition, Imperial's counsel have excluded fees incurred after the penultimate day of trial, at which time the court ruled against MEECO on the last of the claims for which Imperial could have recovered. As a result of these processes, Imperial eliminated 675 of the nearly 3500 hours[1] for which it sought fees. Imperial requests that the court award it 65% of the fees for the remaining 2800 hours its counsel spent in this action.[2]

---

[1] Throughout this order, the court will use round numbers.

[2] Imperial amalgamates its attorneys' varying estimates of the proportion of their time that is recoverable into an aggregate 65% estimate. Each of the five principal timekeepers in this action estimated the percentage of their time that they devoted to claims that provide a basis for attorneys' fees. Warren Rheaume estimated "a minimum of 65%." Rheaume Decl. ¶ 9. Molly

ORDER – 3

The court finds that it is not reasonable for Imperial's counsel to have expended 65% of their time, or more than 1800 hours, defending against the narrow claims for which it is entitled to fees. The most significant consideration leading to this finding is that counsel have overestimated the breadth of the issues and claims for which they are entitled to fees, while underestimating the breadth of the issues and claims for which they have no entitlement to fees.

The first claim that gives rise to Imperial's entitlement to fees is its defense of MEECO's claim for breach of the Distribution Agreement between them. This was not a difficult claim against which to defend. Imperial argued that there was no Distribution Agreement between the parties, because the parties had never signed the Distribution Agreement. This key fact appears to have been undisputed throughout this litigation. In responding to Imperial's summary judgment motion, MEECO produced no evidence suggesting that the Distribution Agreement was in force (Dkt. # 220 at 4-5). In order to recover attorneys' fees, MEECO needed to prove that the parties had entered the Distribution Agreement. Imperial's reciprocal right to recover fees extends no further than the defense it chose – proving that the parties did not enter the Distribution Agreement. See Mt. Hood Beverage Co. v. Constellation Brands, Inc., 63 P.3d 779, 791 (Wash. 2003). If Imperial's counsel expended hundreds of hours developing and implementing this defense, they did not act reasonably.

Rather than confine its fee request to the narrow entitlement that arises from the Distribution Agreement, Imperial repeatedly asserts that it can recover for its defense of

---

Terwilliger estimated "a minimum of 55%." Terwilliger Decl. ¶ 6. Heidi Brooks Bradley estimated "a minimum of 75%." Bradley Decl. ¶ 6. Darin Sands estimated "a minimum of 60%." Sands Decl. ¶ 6. Paralegal Stephanie Childs estimated "at least 65%." Childs Decl. ¶ 5. It would have been simple to apply those estimates to the fees each timekeeper incurred.

ORDER – 4

all "contract-related" claims. Imperial overreaches. Putting aside the parties' dispute over their Confidentiality Agreement, there were numerous claims and issues that had some relation to the Distribution Agreement, but Imperial has no right to recover fees for defending against them. The court noted one such related claim in its summary judgment ruling, when it dismissed MEECO's theory that Imperial had bound itself to a distribution *relationship* through a course of conduct (Dkt. # 220 at 5). MEECO offered this theory as an alternative to its assertion that the Distribution Agreement was in force. MEECO did not allege that the parties had established a course of conduct of paying for attorneys' fees in disputes over their distribution relationship. Imperial is therefore not entitled to fees for successfully defending against this theory. Similarly, MEECO's promissory estoppel theory was "contract-related," but MEECO did not allege that it had relied on Imperial's promise to pay attorneys' fees. MEECO instead alleged that it had relied on Imperial's promise to either purchase MEECO or to continue their existing distribution relationship (Dkt. # 220 at 5-7). Of the many "contract-related" claims that MEECO failed to prove, only Imperial's successful effort to show that it had never entered the Distribution Agreement gives rise to a fee entitlement.

The other claim that gave rise to Imperial's entitlement to fees was MEECO's claim for breach of the Confidentiality Agreement that the parties entered in June 2001. Although this agreement appears to cover only information exchanged in the parties' negotiation over a potential acquisition of MEECO, the court and the parties have treated MEECO's claims for breach of this agreement as coextensive with MEECO's trade secret claims. Imperial's defense against these claims gives rise to a broader fee entitlement than its defense against the Distribution Agreement, but still not as broad as Imperial envisions. The court granted summary judgment against all such claims, with the exception of MEECO's claim that Imperial had misappropriated the concept of using a

ORDER – 5

copper catalyst in a creosote-destroying firelog product (Dkt. # 220 at 7-9). The court noted that, as to all other allegations, MEECO presented no evidence that Imperial had ever used or disclosed any confidential (or trade secret) MEECO information (Dkt. # 220 at 8).

In contrast to Imperial's narrow fee entitlement, the list of claims for which it has no right to recover fees is long, and Imperial spent much more time pursuing those claims than its counsel are willing to acknowledge. Imperial cannot recover fees it incurred in defending against Imperial's successful claims of copyright infringement and reverse passing off. It also cannot recover fees it incurred in successfully defending against MEECO's claims for trade dress infringement, direct trademark infringement, unfair competition, and a violations of the Washington Consumer Protection Act. Finally, Imperial cannot recover for its unsuccessful pursuit of its counterclaims for tortious interference and bad faith assertion of trade secrets. Having presided over the pretrial motions and trial in this matter, the court cannot credit Imperial's assertion that these claims occupied less than half of its counsel's time in this litigation.

Having reviewed the record of this litigation, the court is left with the firm conviction that Imperial is not entitled to 65% of the attorneys' fees it incurred in this action, even taking into account Imperial's deductions of time. Imperial has not met its burden of proving that it is entitled to those fees. The court is left to determine a reasonable award. In doing so, the court will err on the side of undercompensating Imperial. Any other approach would give Imperial an undeserved windfall for failing to establish an appropriate apportionment.

A few other considerations help guide the court's determination of Imperial's fees. First, although the court appreciates Imperial's efforts to identify non-recoverable time, it has not gone far enough. In reviewing Imperial's invoices, the court found numerous

ORDER – 6

entries for time expended on Imperial's counterclaims as well as its defense against MEECO's copyright, trade dress, trademark, and other claims. In addition, Imperial seeks to recover all of the time its counsel spent in successfully establishing that MEECO had waived its right to a jury trial. The court will not permit recovery of those fees. This issue arose because, after undisputedly failing to file a jury demand, MEECO then filed a jury demand in conjunction with its reply to Imperial's counterclaims. But for the assertion of those counterclaims, for which Imperial has no right to recover fees, MEECO would have had no jury demand to rely upon, and the issue would never have been litigated. The court therefore finds that the dispute over MEECO's jury demand is not attributable to the litigation as a whole, but rather to claims for which Imperial has no right to recover fees.

Second, the court must make a substantial deduction from the time Imperial seeks to recover for Stephanie Childs' paralegal work. In its prior order, the court cited Absher Constr. Co. v. Kent Sch. Dist. No. 415, 917 P.2d 1086, 1088 (Wash. Ct. App. 1995), for the proposition that a party who seeks to recover paralegal fees bears an additional burden. Ms. Childs has provided a declaration that establishes her qualifications. Imperial has not proven, however, that all of Ms. Childs' time was legal rather than clerical. Ms. Childs asserts that none of her services were clerical, but she does not address the content of her own time entries. They include what appears to the court to be clerical tasks such as assembling labels, creating video clips, and ordering products. Many entries describe tasks that likely constitute some combination of clerical and legal services, including assembling documents for production in discovery, labeling documents, updating privilege logs, preparing for mediation, updating files, and assembling binders. The court does not suggest any improprieties in Ms. Childs' services or her declaration. Indeed, the large number of hours she devoted to this litigation shows

ORDER – 7

that the attorneys for whom she works have the highest confidence in her abilities. The court merely finds that a party seeking to recover more than 700 hours of paralegal time must provide substantially better evidence than Imperial has put before the court to meet its burden under Absher.

Turning finally to the award of fees, and keeping all of the above considerations in mind, the court roughly divides this action into the period preceding the court's summary judgment order and the period following it. As of May 26, 2005, the date of the summary judgment order, the only "live" claim for which Imperial had any right to recover fees was the claim relating to the use of copper catalyst in its firelog product. Putting aside fees incurred in the post-judgment dispute over attorneys' fees, Imperial seeks to recover just over $300,000 in fees it incurred after summary judgment.[3] The court reduces that amount to $250,000 to reflect the time that Imperial deleted from its request. The court awards 10% of those fees, or $25,000, as this is the portion that it finds reflects the time Imperial reasonably expended in addressing the claim relating to the copper catalyst after summary judgment, in light of the considerations noted above.

Focusing on the active period of this litigation preceding summary judgment, Imperial incurred approximately $565,000 in attorneys fees.[4] The court reduces that amount to $465,000 to compensate for the time that Imperial deleted from its request. The court awards 20% of those fees, or $93,000, because it finds that this portion reflects

---

[3]Imperial's counsel billed just over $255,000 for legal services in June 2005, just over $40,000 for legal services in July 2005, just under $4,000 for August 2005, and just over $12,500 for September 2005. Imperial has appropriately retracted its request for most of the fees incurred from August 2005 through September 2005, as those fees related to addressing Imperial's damage claims. The last invoice that counsel submitted to the court was for just over $31,000 from October 2005. Most of the October invoice was for the instant dispute over attorneys' fees.

[4]The court has focused on invoices that cover December 2004 through May 2005. The invoices preceding December 2004 total less than $20,000.

ORDER – 8

the time Imperial's counsel reasonably expended in defending against the claims for which it can recover fees.

The court awards Imperial $118,000 in attorneys' fees.

**B.      MEECO's Request for Attorneys' Fees**

MEECO's entitlement to recover attorneys' fees is limited to only one of the claims it pursued – its claim for reverse passing off. MEECO's counsel took a much more detailed approach than Imperial's counsel to apportioning their time. Although counsel's time entries do not permit an issue-by-issue breakdown, counsel create various categories corresponding to motions and other tasks in this litigation. They then estimate what portion of each category is appropriately attributable to the claim for which MEECO can recover fees. For categories that counsel deems "essential" to the pursuit of MEECO's reverse passing off claim, they request all of their fees. For categories without any relation to that claim, they request no fees. For other tasks, they seek a portion of fees varying from 25% to 50%. Counsel then undertake the extremely helpful step of noting, on each page of their billing invoices, which category and apportionment percentage corresponds to each time entry. Counsel's efforts provide the court with a good basis for evaluating MEECO's fee request.

After reviewing the evidence, the court finds MEECO's attorneys' fee request to be appropriate. The court deducts just over $15,000 from the request, which is the court's approximation of the fees MEECO incurred in disputing attorneys' fees. The court thus awards MEECO attorneys' fees of $155,000.

**C.      MEECO's Motion for Reconsideration**

MEECO asks the court to consider the portion of its prior order in which it declined to award $1362.80 as a witness fee for Thomas Martin. The court has reviewed the rough transcript of Mr. Martin's testimony, and finds that he answered questions from

ORDER – 9

the court regarding the effect of overlabeling (or reverse passing off) on a manufacturer's products. That testimony was of some assistance to the court in determining damages. For that reason, the court will increase MEECO's costs award by $1362.80.[5]

### IV.   CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part the motions for attorneys' fees (Dkt. ## 300, 304). The court awards Imperial attorneys' fees of $118,000 and awards MEECO attorneys' fees of $155,000. The court GRANTS MEECO's motion for reconsideration (Dkt. # 318).

DATED this 12th day of January, 2006.

JAMES L. ROBART
United States District Judge

---

[5] Under ordinary circumstances, the court would have granted Imperial an opportunity to respond to MEECO's motion for reconsideration. Local Rules W.D. Wash. 7(h)(3). In this case, where the substance of Mr. Martin's testimony is undisputable, and only the court has access to the rough transcripts, the court finds that no response is necessary.

ORDER – 10